**UNITED STATES of America,
Plaintiff/Appellee,**

v.

**Randy Ray HOWARD,
Defendant/Appellant.**

**UNITED STATES of America,
Plaintiff/Appellee,**

v.

**Robert Leroy ANGEL,
Defendant/Appellant.**

Nos. 86–5243, 86–5248.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 2, 1987.

Decided Sept. 21, 1987.

Edward C. Weiner, San Diego, Cal., for plaintiff/appellee.

Juanita R. Brooks and Michael J. McCabe, San Diego, Cal., for defendants/appellants.

Before HUG, BOOCHEVER and WIGGINS, Circuit Judges.

BOOCHEVER, Circuit Judge:

Robert Angel and Randy Howard were convicted of various controlled substance violations. Defendants contend that the district court erred in failing to suppress evidence gathered in a search of Angel's residence and that the court should have granted defendants' motion for a new trial based on a subsequent payment by the government to its rebuttal witness. Because we find that there was no probable cause justifying an entry into Angel's residence, we reverse. Any consent subsequently obtained from Mrs. Angel was a direct result of the unlawful entry and

therefore inadmissible as fruit of the poisonous tree. We need not address the government's excuses for failing to obtain a search warrant or the subsequent issue of the propriety of the payment to the government's rebuttal witness. We remand the conviction of Howard, however, so that the trial court can determine whether he had a reasonable expectation of privacy in the Angel residence to challenge the search.

### FACTS

On May 13, 1985, Narcotic Task Force agents decided to keep surveillance over RJM Laboratories. RJM is a chemical supply house where persons on previous occasions have purchased chemicals for clandestine methamphetamine laboratories. The defendants were observed at RJM, loading boxes of chemicals and glassware into a white limousine. One of the boxes had a triangle on it, indicating the presence of acids or corrosives. The agents knew that corrosives were necessary in the production of methamphetamines. The limousine then proceeded to several other locations; two of which were prior locations of methamphetamine laboratories. The agents, however, did not see anything removed or placed into the limousine at these subsequent stops. The limousine went to Angel's residence where several individuals unloaded boxes of chemicals and glassware from the limousine trunk and carried them into the detached garage. The limousine then proceeded to a 7–Eleven store where the agents secured the limousine and detained the occupants.

During the securing of the limousine, an agent stationed at Angel's home contacted the securing agents and stated that a speeding car had just arrived at the residence. The agent speculated that the occupant of the car had probably observed the securing of the limousine and was rushing to warn the occupants of the residence that the police had just stopped the limousine. Six agents and several sheriff's deputies immediately proceeded to the house. At the residence, the agents ran from their cars to the house yelling "police officers."

The agents were wearing "raid" jackets. The agents entered the residence with their weapons drawn. Inside the house were Glen Hankins, Karen Slaton, Danita Angel and her children. The agents required the occupants of the house to lay on the floor for over half an hour. After the house was secured, the occupants were allowed to sit on a couch. Mrs. Angel was then taken to another room by Agents Williams and Matthews, and the door was closed behind them. Williams then explained to Mrs. Angel the reason the agents seized the residence. He read Mrs. Angel her rights under *Miranda*. Williams asked Mrs. Angel if she would sign a consent to search form. Mrs. Angel signed the form. The agents then searched the house and the garage.

### DISCUSSION

■ Angel and Howard contend that the district court erred by failing to suppress the evidence obtained during the search and seizure of Angel's residence. We review de novo motions to suppress, probable cause, exigent circumstances and the overall lawfulness of a search. *United States v. Smith*, 790 F.2d 789, 791 (9th Cir.1986); *United States v. Feldman*, 788 F.2d 544, 550 (9th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987); *United States v. Licata*, 761 F.2d 537, 543 (9th Cir.1985).

We have previously held that the securing of a residence is a seizure subject to fourth amendment protection. *United States v. Perdomo*, 800 F.2d 916, 918 (9th Cir.1986). Without a warrant, a search and seizure by the government is per se unreasonable under the fourth amendment unless the circumstances fall within the parameters of a specifically established exception. *Coolidge v. New Hampshire*, 403 U.S. 443, 474–75, 91 S.Ct. 2022, 2042–43, 29 L.Ed.2d 564 (1971); *Perdomo*, 800 F.2d at 918. In this case, the government relies on the exigent circumstances exception, *see Warden v. Hayden*, 387 U.S. 294, 298, 87 S.Ct. 1642, 1647, 18 L.Ed.2d 782 (1967), and the consent exception, *see Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct.

2041, 2045, 36 L.Ed.2d 854 (1973), to the warrant requirement.

■ Exigent circumstances are defined as "those circumstances that would cause a reasonable person to believe that entry … was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *United States v. McConney,* 728 F.2d 1195, 1199 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). In *United States v. Licata,* we stated that

> [t]he government bears a heavy burden of demonstrating that exceptional circumstances justified departure from the warrant requirement. The burden cannot be satisfied by speculation about what may or might have happened. There must exist "specific and articulable facts which, taken together with rational inferences …," support the warrantless intrusion. The exigencies must be viewed from the totality of circumstances known to the officers at the time of the warrantless intrusion.

*Licata,* 761 F.2d at 543 (citations omitted). In addition, the government must show that a warrant could not have been obtained in time. *United States v. Echegoyen,* 799 F.2d 1271, 1279 (9th Cir.1986); *United States v. Good,* 780 F.2d 773, 775 (9th Cir.), *cert. denied,* 475 U.S. 1111, 106 S.Ct. 1523, 89 L.Ed.2d 920 (1986).

■ Entry into a person's home is so intrusive that such searches always require probable cause regardless of whether some exception would excuse the warrant requirement. *See Arizona v. Hicks,* — U.S. ——, 107 S.Ct. 1149, 1154, 94 L.Ed.2d 347 (1987); *see also United States v. Winsor,* 816 F.2d 1394, 1399 (9th Cir.), *reh'g granted,* 822 F.2d 1466 (9th Cir.1987); *Licata,* 761 F.2d at 543–44; *United States v. Scott,* 520 F.2d 697, 700 (9th Cir.1975), *cert. denied,* 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976). Thus the government in this case has a twofold duty: (1) it must show probable cause to secure the residence, and (2) it must show the existence of exigent circumstances to excuse the lack of a warrant.

■ The government conceded during oral argument that the agents lacked probable cause to search Angel's residence. Our review of the record confirms that probable cause was not established. The government admits that RJM legally sells chemicals and glassware to third parties. The government does not contend that it is a crime to buy, transport by limousine, and store in a garage, legally obtained chemicals and glassware. The agents did not allege that they knew what specific chemicals and/or glassware were in the defendants' possession. The only clue as to the contents of the boxes was a triangle on the side of one box indicating the presence of a corrosive. The fact that the limousine stopped at two places formerly associated with methamphetamine laboratories does not heighten these facts into probable cause. The agents did not observe activity at these subsequent stops such as removing from or placing items into the limousine. At a maximum, considering the totality of the circumstances, the agents only had a reasonable suspicion to believe that a methamphetamine laboratory was being run in Angel's garage, not in Angel's house. There is no evidence showing that the agents observed anything being placed inside of or taken from the detached garage or limousine into the residential unit or vice versa. There is a complete lack of nexus between the securing of the house and the alleged drug laboratory. The government's assertion of probable cause in its brief lacks any factual basis which would give rise to a probability that there was a drug laboratory in the home. Mere speculation that a drug laboratory might exist in a home is not enough to establish the probable cause necessary to seize that residence. The government also attempts to establish an exigency based upon the possibility of a fire or explosion at Angel's residence. Their argument is factually without merit. As we have indicated, there was no evidence that a drug laboratory was being maintained in the house.

■ Because of the illegal entry into the Angel's residence, Mrs. Angel's subsequent consent to search the premises after the officers had entered the home was tainted and therefore invalid. *See Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Thus, we need not address whether the consent could otherwise be regarded as voluntary.

■ Finally, we are concerned whether Howard had a reasonable expectation of privacy in the Angel residence to permit raising the fourth amendment issue. *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). On the basis of the record before us, it is unclear whether Howard had such an expectation. Because the issue was not raised before the district court, we do not know whether Howard might have produced evidence of privacy expectation. Therefore, we remand the question of Howard's right to challenge the search and seizure. *United States v. Lomas,* 706 F.2d 886, 895 (9th Cir.1983), *cert. denied, Margolis v. United States,* 464 U.S. 1047, 104 S.Ct. 720, 79 L.Ed.2d 182 (1984); *United States v. Perez,* 664 F.2d 1299, 1304 (9th Cir.1981). If on remand, the court finds that Howard did not have a reasonable expectation of privacy, then his conviction stands.

We conclude that the district court erred in denying Angel's motion to suppress and remand for proceedings consistent with this opinion.

REVERSED and REMANDED.