988 F.2d 125
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America Plaintiff-Appellee,
v.
Matthias POLLARD, Defendant-Appellant.
 No. 89-10566.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 18, 1992.
Decided March 3, 1993.
 
 Appeal from the United States District Court for the Eastern District of California; No. CR-S-89-163-RAR, Raul A. Ramirez, District Judge, Presiding.
 E.D.Cal.
 REVERSED AND REMANDED.
 Before WILLIAM A. NORRIS, BEEZER and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendant Matthias Pollard appeals the district court's denial of his motion to suppress. Pollard argues that evidence presented at trial was unlawfully obtained through two searches of his motel room. He is correct; we reverse and remand.
 
 
 3
 * On March 30, 1989, the Sacramento Police Detective Clark received an anonymous tip that a person in Room 202 of the All Star Inn in Sacramento, California appeared to have a sawed-off shotgun. Approximately nineteen hours later, five police officers went to the All Star Inn to investigate; they did not have or make any attempt to obtain a search warrant. On March 30, the officers knew Room 202 was registered to Randy Murphy. Pollard had entered the room on March 31, and had registered under the name Matthew Collins. (R.T., August 11, 1989 at 10; Investigative Report of Detective Clark, evidence of room receipt found during search).
 
 
 4
 The officers knocked on the door of Room 202 and identified themselves as police. Pollard opened the door, dressed only in boxer shorts and a T-shirt. Upon questioning, Pollard responded that while he did not have a sawed-off shotgun, he did have a .357 magnum in the room.
 
 
 5
 Officer Ernest Daniels asked Pollard's permission to search the room. Pollard consented but asked for time to put on a pair of pants. Pollard attempted to close the door, but was stopped by Officer Daniels. Daniels told Pollard to leave the door open for police safety. The officers then asked Pollard his name, and he gave them a name consistent with the room registration of March 31, but inconsistent with the room registration of March 30. Pollard again attempted to close the door. After some back and forth shoving, three police officers pushed the door open, entered the room, and grabbed Pollard to "detain" him. On the floor the officers found a piece of cocaine base, more commonly known as "crack."
 
 
 6
 Two officers, now armed with knowledge of the cocaine base, left and obtained a search warrant for the motel room. Police officers detained Pollard for three hours until they received word of the grant of the search warrant. Cocaine, cocaine base, narcotics paraphernalia, and two firearms were found in the room.
 
 
 7
 After a suppression hearing, the district judge denied Pollard's motion to suppress. The court found that Pollard had revoked his consent to search, but that the warrantless entry and search of the motel room was justified because of exigent circumstances. The judge also found that probable cause did not exist to obtain a warrant before going to the motel. The judge did not expressly indicate if probable cause existed to enter the motel room after Pollard withdrew his consent.
 
 
 8
 Pollard raises two issues related to the searches and suppression of evidence. Pollard first contends that the district judge erred in finding the initial entry lawful under the exigent circumstances exception to the warrant requirement. Pollard also argues that the second search of the room, while done pursuant to a search warrant, was unlawful because the affidavit in support of the warrant established probable cause only with the evidence obtained from the first warrantless search.
 
 II
 
 9
 A search and seizure performed without a warrant is per se unreasonable under the Fourth Amendment unless it falls within a specifically established exception. Coolidge v. New Hampshire, 403 U.S. 443, 474-75 (1971). "We review de novo motions to suppress, probable cause, exigent circumstances and the overall lawfulness of a search." United States v. Howard, 828 F.2d 552, 554 (9th Cir.1987) (citations omitted).
 
 
 10
 At the suppression hearing, the government relied on two of these specifically recognized exceptions: consent, see Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973), and exigent circumstances, see Warden v. Hayden, 387 U.S. 294, 298 (1967). The district court found that Pollard had withdrawn his consent to the search. Relying on the exigent circumstances exception, the district court denied the suppression of the contested evidence.
 
 
 11
 Exigent circumstances are "those circumstances that would cause a reasonable person to believe that entry (or other relevant prompt action) was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts. United States v. McConney, 728 F.2d 1195, 1199 (9th Cir.) (en banc), cert. denied, 469 U.S. 824 (1984). We review de novo the issue of the exigency. Id. at 1205.
 
 
 12
 The officers needed exigent circumstances and probable cause to lawfully search Pollard's room. See United States v. Suarez, 902 F.2d 1466, 1467-68 (9th Cir.1990); Howard, 828 F.2d at 555. The district judge found exigent circumstances. We need not review this finding because the district judge made no finding on probable cause. We must make a practical, common sense decision as to whether in the totality of the circumstances there was a fair probability of finding contraband or evidence. United States v. Huguez-Ibarra, 954 F.2d 546, 551 (9th Cir.1992).
 
 
 13
 The government admits that at the time the police started out for the All Star Inn, they did not have probable cause. The government argues that information gleaned after the arrival at the motel gave rise to probable cause. We are unable to conclude that probable cause existed.
 
 
 14
 The location of the motel in a high crime area was certainly known to the police officers prior to their arrival. This cannot be classified as new information contributing to probable cause. The fact that Pollard gave a name other than that in the register is not surprising. People often stay in motel rooms registered under another's name. Indeed it is unclear what the police knew about the room registration. The name Pollard gave did not match the registered name for March 30, but the search occurred on March 31. Additionally, Pollard's openness about revealing that he had a different, legal weapon added no weight to the tip.
 
 
 15
 Finally, the government advances the most illogical argument of all.
 
 
 16
 Pollard's attempt to close the door was further evidence that criminal activity was afoot because it was inconsistent with his prior consent to search and his prior conversations with the officers. Had Pollard simply refused the officer's request to search his room, the officers may, at that point, have been required to terminate the contact. When Pollard attempted to close the door, however, a reasonable person would be justified in believing that it was for the purpose of arming himself. This was further evidence that the shotgun might indeed be located in the room.
 
 
 17
 Appellee's Brief at 6.
 
 
 18
 Pollard's attempt to close the door was nothing more than an indication, as the district court found, that he revoked his consent. Voluntary consent is needed for a consent search without probable cause. The government argues the tautological position that refusing or revoking consent somehow gives rise to probable cause. We find no support for this proposition in the law of the circuit. The revocation of the consent to search is not evidence that the alleged shotgun was in the room.
 
 
 19
 The warrantless entry of Pollard's motel room was without probable cause. The piece of cocaine base discovered by the officers should have been suppressed.
 
 III
 
 20
 Pollard challenges the second, more extensive search conducted under the auspices of a warrant. That warrant, however, was based in good measure on the piece of cocaine base discovered during the first, unlawful search. We must decide whether the affidavit presented to the magistrate, purged of the illegally obtained information, still provides probable cause for the search. United States v. Grandstaff, 813 F.2d 1353, 1355 (9th Cir.), cert. denied, 484 U.S. 837 (1987). We review the sufficiency of the redacted affidavit de novo. Id.
 
 
 21
 Without the evidence of the cocaine base, the affidavit does not provide probable cause for the further search. The district court should have suppressed the evidence found in the second search.
 
 IV
 
 22
 Finally, Pollard argues that the two narcotics counts charged are the same. As we remand and order the suppression of substantial evidence, we do not address this issue.
 
 
 23
 The district court's denial of Pollard's motion to suppress is REVERSED; the case is REMANDED for further proceedings consistent with this disposition.
 
 
 24
 KLEINFELD, Judge, concurring.
 
 
 25
 I concur, but respectfully disagree with the majority's characterization of the evidence presented by the government on the issue of probable cause.
 
 
 26
 When the police officers arrived at the All Star Inn, they had an anonymous tip that an individual had been seen with a sawed-off shotgun in Room 202. One of the officers had arrested people for narcotics dealing at the motel before, and testified that it was commonly used as a place to distribute narcotics. During their conversation with Pollard, the police obtained the additional information that he had a .357 magnum in the room, and that the name he gave was not the same as in the motel register. Pollard's attempt to force the door closed was inconsistent with his prior consent to the search. Pollard's attempt to shut the door before he put his pants on was particularly suspicious since during his conversation with the officers, he was standing in the open doorway wearing only a t-shirt and boxer shorts.
 
 
 27
 The majority interprets Pollard's attempt to close the door as "nothing more than an indication ... that he revoked his consent." While I agree that his actions effected a revocation of consent, I do not agree that they were "nothing more." When Pollard tried to shut the door after telling officers that he would like to put his pants on, additional information was conveyed. Since there appeared to be no reason of modesty for having the door closed, Pollard's actions suggested possible criminal activity. He may have wanted the door closed in order to destroy evidence of drugs, to hide a sawed-off shotgun, or to arm himself with the shotgun or the .357 magnum for confrontation with the police. His implication that he wanted the door closed for privacy while he put his pants on was belied by his willingness to stand in his t-shirt and undershorts with the door wide open while talking to the police. In evaluating the probability that contraband or evidence of a crime would be found inside, Pollard's attempt to shut the door is probative, but not sufficient to establish a fair probability of finding contraband or evidence of a crime.
 
 
 28
 Pollard's openness about revealing that he had a .357 subtracted from instead of adding to the sawed-off shotgun tip. Indeed, the police did not even list the sawed-off shotgun in the search warrant affidavit as something for which they proposed to look. They proposed to look for crack cocaine and related paraphernalia. But before they pushed into the room, the police had no probable cause to believe that crack cocaine or paraphernalia were in the room. They knew, at most, that Pollard might well be up to no good because he was staying under a false name in a motel where narcotics arrests had been made of other people, and he tried to shut the door in their faces for an illogical reason. These facts might have established a special exigency dispensing with the need to obtain a warrant before searching, but they were not enough to establish a fair probability of finding narcotics and narcotics paraphernalia in Pollard's room. It is too long a stretch from the reasonable inference that Pollard might well be up to no good to the speculative inference that he had crack cocaine and paraphernalia in the room. I therefore concur in the majority's judgment that the district court should be reversed, and the case remanded for further proceedings.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3