**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

v.

JASPER BLACK,
                    *Defendant-Appellant.*

No. 05-10640

D.C. No.
CR-04-00093-LDG
District of Nevada,
Las Vegas

ORDER

Filed April 10, 2007

Before: Betty B. Fletcher and Marsha S. Berzon,
Circuit Judges, and David G. Trager,* Senior Judge.

Order;
Dissent by Judge Kozinski

---

**ORDER**

Judges B. Fletcher and Trager voted to deny the petition for panel rehearing. Judge Berzon voted to grant the petition for panel rehearing. Judge Berzon voted to grant the petition for rehearing en banc and Judges B. Fletcher and Trager recommended denial of the petition for rehearing en banc.

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35.

---

*The Honorable David G. Trager, Senior United States District Judge for the Eastern District of New York, sitting by designation.

The petition for panel rehearing and the petition for rehearing en banc are denied.

---

KOZINSKI, Circuit Judge, with whom Judges REINHARDT, KLEINFELD and BERZON join, dissenting from the order denying the petition for rehearing en banc:

Once upon a time in the West there was a special place called home. Solemn pronouncements from our nation's highest court, and our own court, protected it from warrantless police intrusions. "With few exceptions," the Supreme Court held, "the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no." *Kyllo* v. *United States*, 533 U.S. 27, 31 (2001). Such searches were deemed "presumptively unreasonable." *Payton* v. *New York*, 445 U.S. 573, 586 (1980). We held that the "government bears a *heavy burden* of demonstrating that *exceptional circumstances* justified departure from the warrant requirement. The burden [could not] be satisfied by *speculation* about what may or might have happened." *United States* v. *Howard*, 828 F.2d 552, 555 (9th Cir. 1987) (emphasis added) (quoting *United States* v. *Licata*, 761 F.2d 537, 543 (9th Cir. 1985)). Police who entered the home without a valid warrant could be held personally liable. *Groh* v. *Ramirez*, 540 U.S. 551, 563-65 (2004).

That special place is no more. The rules haven't changed, at least not on paper. But legal rules are only as good as their last application. The panel majority dutifully recites the right standard, but guts it of all meaning by approving an intrusion into the home that does not remotely satisfy it. If the justification here satisfies the government's "heavy burden" to show non-speculative "exceptional circumstances," it's hard to imagine how we can keep the police from barging into any home anytime they please.

The relevant facts are undisputed. Walker called 911 at precisely 8:39:3465 A.M. from a grocery store to report that she had just been beaten by Black, who had a gun. At the end of the call, Walker indicated that she would drive back to the apartment with her mother, and that they would wait for the police outside the building in a white pick-up truck. She spoke with the dispatcher until 8:40:1749. Officer Rodriguez was dispatched at 8:42:5825, and arrived at the apartment half a minute later, at 8:43:2487. The total time elapsed between Walker hanging up with the 911 dispatcher and the arrival of the police at the apartment was three minutes and seven seconds.

Rodriguez testified that it would take about two minutes to drive from the grocery store to the apartment. When Rodriguez arrived, he did not see Walker, her mother or the white truck. Walker was, at that point, just one minute past her earliest possible arrival time. Rodriguez and another officer knocked on the apartment door, but nobody answered. The other officer circled around back and found Black in the backyard. When the officers didn't find a gun on Black, they took his key to the apartment, performed a "welfare" search of the dwelling and found the gun—and, of course, didn't find Walker.

There was absolutely no evidence of the government's nightmare scenario that Walker lay bleeding and unconscious inside the apartment. As the 911 dispatcher's log shows, there was "not enough time for Black to somehow get Walker back into the apartment, and to injure her, and then to leave, as the government theorizes could have been the case." Berzon Dissent at 3974. Nor were there any eyewitnesses, signs of a scuffle, reports of gunshots or even of a commotion. The abduction would have happened in the street, in broad daylight, yet no one saw a thing; the super, who talked to the police, reported nothing unusual.

Officer Rodriguez admitted that he had "[n]o information" that Walker was in the residence; his explanation for the war-

rantless entry was that "if she'd have come back to the residence, [Walker] possibly could have gotten taken . . . back into the house and stuff." If this satisfies the government's "heavy burden" to show "extraordinary circumstances" not based on "speculation," *Howard*, 828 F.2d at 555, then "heavy burden," "extraordinary circumstances" and "speculation" have no meaning in these parts.

The majority gives the government a pass because "the exigencies of domestic abuse cases present dangers that, in an appropriate case, may override considerations of privacy." Maj. op. at 3969 (quoting *United States* v. *Brooks*, 367 F.3d 1128, 1136 (9th Cir. 2004)). The problem with this approach is that the government has any number of such crises-du-jour: terrorism, child pornography, child abuse, drugs, hate crimes —the list is endless. When confronted with such serious crimes, it is the job of the police to be suspicious; the job of the courts is to insist that police develop evidence supporting these suspicions before they defile the sanctity of the home.

In a particularly disturbing passage, the panel majority opines that "[e]rring on the side of caution is exactly what we expect of conscientious police officers." Maj. op. at 3969. This is entirely backwards when the cautious error involves invasion of the home. In such circumstances, we expect police to err on the other side of caution by staying out unless and until they obtain a warrant or satisfy the demanding constitutional standard for a warrantless search. The majority's unfortunate phrase will be widely seen as a green light for the police to "err on the side of caution" by breaking into people's homes based on half-baked suspicions.

When a panel of our court can find that the facts here satisfy the government's "heavy burden" for invading the home without a warrant, I despair about the future of our constitutional rights. If the right accorded the greatest protection by the Fourth Amendment—the right to privacy of the home— can be so casually brushed aside, no right is safe. Because my

colleagues do not similarly view this issue as one of exceptional importance, I sorrowfully dissent.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2007 Thomson/West.