# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee,*

v.

JASPER BLACK,
       *Defendant-Appellant.*

No. 05-10640

D.C. No.
CR-04-00093-LDG

ORDER
AMENDING
OPINION AND
DISSENT AND
AMENDED
OPINION AND
AMENDED
DISSENT

Appeal from the United States District Court
for the District of Nevada
Lloyd D. George, District Judge, Presiding

Argued and Submitted
September 14, 2006—San Francisco, California

Filed October 26, 2006
Amended April 9, 2007

Before: Betty B. Fletcher and Marsha S. Berzon,
Circuit Judges, and David G. Trager,* District Judge.

Opinion by Judge B. Fletcher;
Dissent by Judge Berzon

---

*The Honorable David G. Trager, Senior United States District Judge
for the Eastern District of New York, sitting by designation.

**COUNSEL**

Anne Traum, Esq., Assistant Federal Public Defender, Las Vegas, Nevada, for the defendant-appellant.

J. Gregory Damm, Esq., Assistant United States Attorney, Las Vegas, Nevada, for the plaintiff-appellee.

**ORDER**

The opinion and dissent filed on October 26, 2006, *United States v. Black*, 466 F.3d 1143 (9th Cir. 2006), are amended as follows:

AMENDMENTS TO OPINION

On page 1145, line 32 add the following sentence at the beginning of the paragraph: "First, the police did not have stop-watches in hand and could only approximate the elapsed times." In the sentence that originally headed this paragraph, delete "First" and substitute "Second". Delete from page 1145, lines 33-39:

> Second, the times cited by the dissent are all approximate times. Rodriguez was dispatched at *approximately* 8:40 and arrived at *approximately* 8:43. If each approximation is off by a single minute, then Walker could have arrived at the apartment three minutes before Rodriguez — ample time for Black to have taken her inside the building. We conclude that the circumstances do support an objectively reasonable belief that Walker could be in the apartment.

At the end of the altered paragraph, add:

> Third, what the officers knew at the time was that Walker said she would meet them at the scene, she was not there but her attacker was, and he denied living in the apartment though he had a key to it. These circumstances were reason enough for the officers to believe that Walker could very well be in the apartment injured. In addition, the attacker admitted that he was aware that the officers were investigating a domestic violence call. How did he know that? It could be that Walker told him earlier that she was calling the police. But a more serious alternative was also a possibility: Walker had returned and told Black that the police were on the way to which he had a violent response. The officers did not have the time to conduct a thorough examination of all the information that was available to them and to conclude, as we might after the fact, that this was an unlikely possibility.

> As the dissent rightly concedes, whether the actions of the police are objectively reasonable is to be judged by the circumstances known to them. They were not conducting a trial, but were required to make an on-the-spot decision as to whether Walker could be in the apartment in need of medical help; the objective circumstances did not require them to reach the conclusion that there was little or no risk that Walker was in the apartment in danger. To the contrary, the combination of these circumstances support an objectively reasonable belief that Walker could be in the apartment.

## AMENDMENTS TO DISSENT

In the third full paragraph on page 1148, replace the sentence "The first officer arrived at 804 J Street, about three

minutes after Walker called 911" with "The first officer, Rodriguez, arrived at 804 J Street at 8:43 a.m., three minutes after Walker ended her 911 call."

1.  In the last full paragraph beginning on page 1148, replace the first two sentences — "The majority argues that this timeline of the morning's events somehow errs by relying — seemingly, too much — on the evidence before supported by the record. And yet, these are the facts before us and the facts upon which we must rely to make our decision." — with the next three paragraphs:

    The timeline of events in this case is amply supported by the record, courtesy of an exceedingly precise log — one that chronicles the relevant events down to the millisecond — from the Las Vegas police department's communication center. According to that log, we know that Walker called 911 at exactly 8:39:3465 and that she spoke with a dispatcher until exactly 8:40:1749. We also know that Rodriguez was dispatched at exactly 8:42:5825 and that he arrived at 804 J Street at 8:43:2487 — again just over three minutes after Walker ended her 911 call.

    The majority prefers to ignore these facts in favor of conjecture — specifically, its inference that Black knew the police were investigating a domestic violence incident because Walker herself told him about the 911 call, after hypothetically returning to the apartment. This hypothesis, however, does not accord with the tight timeline that makes it nigh unto impossible for Walker to

have returned to the apartment after calling 911 but before Officer Rodriguez's arrival.

Moreover, by hanging its hat on this version of events, the majority ignores its own alternate, but far more plausible, scenario — namely, that Black knew the police were investigating a domestic violence incident because Walker told him that she would call 911 *before* fleeing the apartment. This inference does not hinge on Walker returning to the apartment after calling 911 and, thus, unlike the majority's conjecture, would fit into the timeline presented; not surprisingly, the majority dismisses it. Equally plausible under the established chronological constraints is yet another possibility — that Black surmised that the police had arrived to investigate a domestic violence incident not because of anything Walker said or did, but simply because he had been involved in just such an incident earlier that morning. In short, not only does the majority base its analysis on pure conjecture, but the theories it spins out do not conform to the detailed timeline the record establishes.

2. On page 1149, begin a new paragraph with the text: "To be sure, none of the information . . . ."

3. On page 1149, in the sentence beginning "To be sure, none of the information . . . ," replace the word "here" with "in the record," so that the sentence now reads: "To be sure, none of the information in the record affirmatively confirms exactly where Walker was after she made her 911 call."

4.  On page 1149, edit the sentence that begins "In-
    stead, the government's arguments . . . ." so that
    it reads: "Instead, the government's arguments,
    like the majority's, amount to nothing more than
    insufficient 'speculation.' "

---

## AMENDED OPINION

B. FLETCHER, Circuit Judge:

On appeal, Jasper Black challenges his conviction as a
felon in possession, arguing that the district court erred when
it denied his motion to suppress the gun. We affirm.

## I.

The police justify their entry into Black's apartment, not as
one looking for evidence of a crime but as a welfare search
occasioned by a 911 domestic violence call. Police were dis-
patched to the apartment after Black's ex-girlfriend, Tyroshia
Walker, called 911 and reported that Black had beaten her up
that morning in the apartment and that he had a gun. Toward
the end of her 911 call, Walker told the dispatcher that she
intended to return to the apartment with her mother in order
to retrieve her clothing and that the two women would wait
outside the apartment, in a white Ford pickup truck, for police
to arrive. Officer Rodriguez was dispatched to the scene to
meet the women. When he arrived at the apartment a few
minutes later there were no signs of Walker, her mother, or
the truck. Rodriguez contacted Officer Kikkert, who was
already on his way to the apartment, and directed him to stop
by the grocery store from which Walker had made her phone
call. Kikkert checked the store for signs of Walker but, find-
ing none, he continued to the apartment.

After Kikkert arrived at Black's apartment, the two officers
knocked on the front door but received no response. They

then contacted the apartment manager in an attempt to gain access to the building. In the meantime, Kikkert circled the building to inspect the backyard area. There, he discovered an individual who matched Black's physical description. The individual identified himself as Jasper Black and admitted that he knew the police were investigating a domestic violence call. He denied knowing the whereabouts of Walker and also denied that he lived in the apartment. When the defendant became agitated, one of the police officers patted him down for weapons and searched his pockets with the defendant's consent, which yielded the key to the apartment. Using the key, Rodriguez entered and made a quick sweep of the apartment to see if anyone was there. No one was present, but Rodriguez noticed a gun on the bed. Without touching the gun, he exited, arrested Black, and sought a warrant for the gun.

[1] The police were justified in their entry because they feared that Walker could have been inside the apartment, badly injured and in need of medical attention, and that their warrantless search of the apartment was, therefore, justified by exigent circumstances. As the government argued both during the suppression hearing and on appeal, Walker could have returned to the apartment after her 911 call, but before police arrived at the scene. At that point, Black could have managed to pull her back into the apartment. Once inside the apartment, Black — in a repeat performance of his behavior earlier that morning — could have beaten Walker again and left her in the apartment severely injured. Even worse, he could have shot Walker using the gun that police knew was inside the apartment.

The dissent would hold that the circumstances of this case do not support an objectively reasonable belief that Walker could be inside the apartment. It emphasizes the short time span between Walker's phone call and Rodriguez's arrival on the scene. Because Walker was a two-minute drive from the apartment building when she called the police, and Officer

Rodriguez arrived approximately three minutes after the call, the dissent argues that there was not sufficient time after Walker's arrival for the defendant to force her into the apartment. The dissent parses the time too finely.

[2] First, the police did not have stop-watches in hand and could only approximate the elapsed times. Second, if Black had seen Walker arrive outside the building, it would take little time for him to threaten Walker with a gun and force her inside. Third, what the officers knew at the time was that Walker said she would meet them at the scene, she was not there but her attacker was, and he denied living in the apartment though he had a key to it. These circumstances were reason enough for the officers to believe that Walker could very well be in the apartment injured. In addition, the attacker admitted that he was aware that the officers were investigating a domestic violence call. How did he know that? It could be that Walker told him earlier that she was calling the police. But a more serious alternative was also a possibility: Walker had returned and told Black that the police were on the way to which he had a violent response. The officers did not have the time to conduct a thorough examination of all the information that was available to them and to conclude, as we might after the fact, that this was an unlikely possibility.

As the dissent rightly concedes, whether the actions of the police are objectively reasonable is to be judged by the circumstances known to them. They were not conducting a trial, but were required to make an on-the-spot decision as to whether Walker could be in the apartment in need of medical help; the objective circumstances did not require them to reach the conclusion that there was little or no risk that Walker was in the apartment in danger. To the contrary, the combination of these circumstances support an objectively reasonable belief that Walker could be in the apartment.

[3] This is a case where the police would be harshly criticized had they not investigated and Walker was in fact in the

apartment. Erring on the side of caution is exactly what we expect of conscientious police officers. This is a "welfare search" where rescue is the objective, rather than a search for crime. We should not second-guess the officers objectively reasonable decision in such a case.

[4] Our circuit has recognized that "the exigencies of domestic abuse cases present dangers that, in an appropriate case, may override considerations of privacy." *United States v. Brooks*, 367 F.3d 1128, 1136 (2004). While we have stopped short of holding that "domestic abuse cases create a per se exigent need for warrantless entry," we continue to evaluate, on a case-by-case basis, whether the "total circumstances, presented to the law officer before a search . . . relieved the officer of the customary need for a prior warrant." *Id.* Our own individualized assessment of the circumstances presented in this case leads us to the same conclusion that the district court reached: the officer's initial warrantless entry into the apartment was justified by exigent circumstance and, as a result, the subsequent seizure of Black's handgun — this time, accomplished with warrant in hand — was not unconstitutional under the Fourth Amendment.[1]

---

[1]Analyzing police action under the "emergency aid" doctrine compels the same conclusion. Under this doctrine, "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *See Brigham City, Utah v. Stuart*, 126 S. Ct. 1943, 1948 (2006). If, in the course of doing so, an officer "discovers evidence of illegal activity, that evidence is admissible even if there was not probable cause to believe that such evidence would have been found." *See United States v. Martinez*, 406 F.3d 1130, 1164 (9th Cir. 2005). In *Brigham City*, the Supreme Court held that the emergency aid doctrine applies only if a court concludes that an officer's decision to enter without a warrant was objectively reasonable. *See Brigham City*, 126 S. Ct. at 1948 (rejecting the argument that the officer's subjective motivation is in any way relevant). Because this "objective reasonableness" test is essentially the same as the one courts use to determine whether police action is justified under the "exigent circumstances" exception, we can affirm the district court's denial of Black's motion to suppress under the emergency aid doctrine as well.

**[5]** We affirm the district court's decision to deny Black's motion to suppress and, in turn, uphold his conviction.

## II.

**[6]** On appeal, Black also argues that the government failed at the sentencing hearing to prove that he had a prior qualifying controlled substances offense under U.S.S.G. § 2K2.1(a)(2), because it never supplied the sentencing judge with the actual statute of conviction. *See United States v. Pimentel-Flores*, 339 F.3d 959, 967 (9th Cir. 2003) ("[T]he actual statute of prior conviction must be supplied to the district court by the government whether or not anyone objects to its absence."). The government acknowledges the mistake, but asks us to correct it by taking judicial notice of a controlled-substances-related Judgment of Conviction that was issued by a Nevada state court against Black. Appellate courts "generally will not consider facts outside the record developed before the district court," but "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (taking judicial notice of a California court's final judgment).

**[7]** Because Black did not object to the government's failure to provide the statute's citation before the district court, we review this matter for plain error. *See Pimentel-Flores*, 339 F.3d at 967. In so doing, we conclude that although the government's error was both "actual" and "plain," it did not affect Black's "substantial rights." *Id.* First, Black's prior conviction is clearly related to a controlled substances offense. Second, if we declined to take judicial notice of the Judgment of Conviction, we would merely be delaying the inevitable; our next step would simply be to remand Black's case for resentencing. *Id.* at 969 (remanding to the district court for resentencing so that the government can satisfy its burden of

"submit[ting] judicially-noticeable documents demonstrating the prior statute of conviction"). Rather than take this unnecessary step — and in light of the fact that our decision to avoid doing so does not affect Black's substantial rights — we, instead, take judicial notice of the Judgment of Conviction and affirm Black's 110-month sentence.

**AFFIRMED.**

---

## AMENDED DISSENT

BERZON, Circuit Judge, dissenting:

I dissent. Because I believe the officer's warrantless search of the apartment cannot be justified under the Fourth Amendment's "exigent circumstances" exception to the warrant requirement, I would reverse the district court's decision to deny Black's motion to suppress and overturn his conviction.[1]

I begin by emphasizing the "heavy burden" that the government bears when trying to prove exigent circumstances. *See United States v. Howard*, 828 F.2d 552, 555 (9th Cir. 1987) (citing *United States v. Licata*, 761 F.2d 537, 543 (9th Cir. 1985)). Exigent circumstances are "those circumstances that would cause a reasonable person to believe that entry . . . was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *United States v. Brooks*, 367 F.3d 1128, 1135 (9th Cir. 2004) (omission in original) (citing *United States v. McConney*, 728 F.2d 1195, 1199 (9th Cir. 1984) (en banc)). To prove that such circumstances existed, the government cannot rely on "speculation about what may or might have happened." *See Howard*, 828 F.2d at

---

[1]Were I to reach the issue decided in Part II of the disposition, regarding sentencing, I would agree with the majority's conclusion.

555. Instead, it must point to "specific and articulable facts which, taken together with rational inferences . . . , support the warrantless intrusion." *Id.* (internal quotations omitted) (omission in original). A court, in turn, must view the exigencies "from the totality of circumstances known to the officers at the time of the warrantless intrusion." *Id. See also United States v. Arellano-Ochoa*, Nos. 04-30545, 05-30328, 2006 WL 2506395, at * 2 (9th Cir. Aug. 31, 2006) ("Whether exigent circumstances exist in a given case is a fact-specific inquiry that depends on the totality of the circumstances."). It must consider whether, in light of these circumstances, an officer's decision to enter without a warrant was "objectively reasonable." *Brooks*, 367 F.3d at 1136.

As the majority points out, our court and other circuits have indeed recognized that domestic violence cases present a unique set of dangers that may, at times, "override considerations of privacy." *Id.* At the same time, there is no domestic abuse exception to the Fourth Amendment generally, or to the limitations on the exigent circumstances exception in particular. Instead, in those domestic violence cases where courts have upheld a finding of exigent circumstances, the police were presented with clear evidence that the victim was both still in the vicinity of the abuser and still in danger. *See United States v. Martinez*, 406 F.3d 1160, 1164 (9th Cir. 2005) ("When the domestic violence victim is still in the home, circumstances may justify an entry pursuant to the exigency doctrine."). In *United States v. Brooks*, for example, we held that exigent circumstances supported an officer's warrantless entry into a hotel room when the officer was dispatched to the room after a guest called 911 to report "sounds of a woman being beaten" from the room next door. 367 F.3d at 1130. When the officer arrived, the defendant answered the door and confirmed that a woman had been in the room, that she had been "very loud," and that she was now in the bathroom. *Id.* Faced with this set of circumstances — and considering the fact that the officer could not see or hear the woman but could observe that the hotel room was in "total disarray"

— this court held that the officer's decision to enter the room without a warrant was justified "by an objectively reasonable belief that a woman might be injured and entry was 'necessary to prevent physical harm.' " *Id.* at 1130, 1135. *See also Martinez*, 406 F.3d at 1163-64 (holding that no exigent circumstances justified a warrantless entry where police arrived at the scene and found the domestic abuse victim already outside the home, in the front yard); *United States v. Davis*, 290 F.3d 1239, 1243-44 (10th Cir. 2002) (finding no exigent circumstances to justify a warrantless entry, where police responded to a domestic disturbance call only to have the victim "appear[ ] without any signs of harm"); *United States v. Cunningham*, 133 F.3d 1070, 1071-73 (8th Cir. 1998) (holding that exigent circumstances justified a warrantless search of the home where police received a 911 call from a woman who identified herself and claimed that she was being held against her will and where, upon arriving at the scene, police "could hear a woman crying inside the apartment"); *Tierney v. Davidson*, 133 F.3d 189, 197 (2d Cir. 1998) (holding that exigent circumstances justified a warrantless entry and search of a home where the officer responded to a 911 call reporting a domestic disturbance and, after arriving at the scene, spoke to neighbors who informed him "that the shouting had ended right before his arrival," thus allowing the officer to reasonably conclude that "both antagonists remained in the house").

In the case before us, however, the government points to no specific facts leading to the "objectively reasonable" belief that Walker, following her phone call to 911, somehow found herself back inside the apartment where Black was staying and was therefore in need of medical assistance. Instead, all of the facts available to the police that morning point to the conclusion that Walker was *outside* the apartment, not trapped within it.

The police knew that, at 8:39 a.m., Walker had called the 911 dispatcher from a local grocery store. Twice, the dispatcher asked if Walker needed medical assistance; twice,

Walker refused. At the end of the conversation, Walker told the dispatcher that her mother was with her and that, together, they would return to the apartment on 804 J Street. She informed the dispatcher that she would stay outside the apartment.

The first officer, Rodriguez, arrived at 804 J Street at 8:43 a.m., three minutes after Walker ended her 911 call. He testified during the evidentiary hearing that it would have taken him about two minutes to drive from the grocery store to the apartment. Even assuming that Walker left the store *immediately* after she got off the phone with the 911 dispatcher and that she *immediately* headed to 804 J Street, she still would have only arrived back at the apartment about one minute before the police. That is not enough time for Black to somehow get Walker back into the apartment, and to injure her, and then to leave, as the government theorizes could have been the case. Further, at no point during his time outside the apartment, even immediately upon his arrival, did the first officer hear any noises coming from inside the residence.

The timeline of events in this case is amply supported by the record, courtesy of an exceedingly precise log — one that chronicles the relevant events down to the millisecond — from the Las Vegas police department's communication center. According to that log, we know that Walker called 911 at exactly 8:39:3465 and that she spoke with a dispatcher until exactly 8:40:1749. We also know that Rodriguez was dispatched at exactly 8:42:5825 and that he arrived at 804 J Street at 8:43:2487 — again just over three minutes after Walker ended her 911 call.

The majority prefers to ignore these facts in favor of conjecture — specifically, its inference that Black knew the police were investigating a domestic violence incident because Walker herself told him about the 911 call, after hypothetically returning to the apartment. This hypothesis, however, does not accord with the tight timeline that makes it nigh unto impossible for Walker to have returned to the

apartment after calling 911 but before Officer Rodriguez's arrival.

Moreover, by hanging its hat on this version of events, the majority ignores its own alternate, but far more plausible, scenario — namely, that Black knew the police were investigating a domestic violence incident because Walker told him that she would call 911 *before* fleeing the apartment. This inference does not hinge on Walker returning to the apartment after calling 911 and, thus, unlike the majority's conjecture, would fit into the timeline presented; not surprisingly, the majority dismisses it. Equally plausible under the established chronological constraints is yet another possibility — that Black surmised that the police had arrived to investigate a domestic violence incident not because of anything Walker said or did, but simply because he had been involved in just such an incident earlier that morning. In short, not only does the majority base its analysis on pure conjecture, but the theories it spins out do not conform to the detailed timeline the record establishes.

To be sure, none of the information in the record affirmatively confirms exactly where Walker was after she made her 911 call. Neither, however, does it constitute the kind of "specific and articulable facts" that, when "taken together with rational inferences" would "support the warrantless intrusion." *Howard*, 828 F.2d at 555. Instead, the government's arguments, like the majority's, amount to nothing more than insufficient "speculation." *Id.*[2]

For these reasons, I respectfully dissent.

---

[2] Unlike the majority, I find the government's argument equally unconvincing when considered under the "emergency aid doctrine." Both the emergency aid doctrine and the exigent circumstances exception require an "objective reasonableness" analysis. Because police actions that morning were no more "objectively reasonable" under the emergency aid doctrine exception than they were under the exigent circumstances exception, I believe that their argument under this alternative exception to the Fourth Amendment's warrant requirement fails as well.