J-A25020-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ASHLEY LAUREN WILMER, | |
| Appellant | No. 296 MDA 2016 |

Appeal from the Judgment of Sentence February 16, 2016
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0003487-2013

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SHOGAN, J.: **FILED DECEMBER 05, 2016**

Appellant, Ashley Lauren Wilmer, appeals from the February 16, 2016 judgment of sentence entered following her conviction at a bench trial of possession of drug paraphernalia. Following our careful review, we affirm.

The trial court summarized the facts of the crime as follows:

> On October 27, 2013, Pennsylvania State Trooper Charles D. Smolleck and Trooper Shoap were on foot patrol in the Cumberland County portion of Shippensburg, Pennsylvania. The Troopers came upon [Appellant's] residence, a sorority house, and observed multiple individuals standing on the roof yelling incoherently. Trooper Smolleck also noted a young man who appeared severely intoxicated who was unsteadily climbing on the roof about twenty feet from the ground.
>
> Trooper Smolleck was afraid that the young man was about to fall off the roof and injure himself severely, possibly

---

[*] Former Justice specially assigned to the Superior Court.

dying. He and Trooper Shoap approached the front door of the residence and sought permission to enter, but none of the people inside would open the door for them. At that time, Trooper Shoap attempted unsuccessfully to kick in the door. Then, fearing the imminent danger to the young man's safety, Trooper Shoap broke a side window and entered the residence, immediately heading upstairs to safeguard the young man. In their efforts to reach the roof, the Troopers were forced to remove and possibly damage an air conditioning unit from a window. Unfortunately, by the time they arrived at the rooftop, the young man had already fallen and was being treated by first responders.

At this point the Troopers retraced their steps and exited the residence. While they were exiting, Trooper Smolleck noted a baggie of marijuana and a marijuana grinder sitting in plain view on a coffee table. He seized the evidence and brought it outside to a patrol vehicle where he placed it in a secure location. Ultimately, these items would not form the basis for the charges against [Appellant].

After securing the evidence, Trooper Smolleck reentered the residence and began trying to identify an actual resident of the house for the purpose of filing an incident report. This was a less than straightforward task as most of the people present claimed they were only visitors to the house. Once inside, he approached [Appellant's] bedroom and knocked on the door. He did this without any intention of arresting [Appellant] or anyone else in the residence, but to document any residents' names for his incident report relating to the damage to the window and air conditioning unit caused by the Troopers in the furtherance of their duties.

After [Appellant] admitted to being a resident of the house, Trooper Smolleck began to take down her information. During their conversation the Trooper noted a glass marijuana bong and a paraphernalia pipe sitting in plain view. When asked, [Appellant] admitted to ownership of the contraband. On that basis, Trooper Smolleck charged [Appellant] with the possession of drug paraphernalia.

Trial Court Opinion, 4/19/16, at 1–3.

Appellant was charged with one count of possession of drug paraphernalia, 35 P.S. § 780-113(a)(32), an ungraded misdemeanor. Appellant filed a motion to suppress evidence on May 15, 2015; the court held a hearing on July 6, 2015, following which it denied the motion. Appellant proceeded to a stipulated nonjury trial and was found guilty as charged on February 16, 2016. The trial court sentenced Appellant to pay the costs of prosecution and a $50.00 fine. Appellant filed a timely notice of appeal on February 19, 2016; both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following single issue for our review:

I. Did the suppression court make an error of law in denying Appellant's motion to suppress where the police entry into Appellant's residence was without consent, a warrant, or exigent circumstances?

Appellant's Brief at 5 (full capitalization omitted).

Appellant assails the trial court's denial of her suppression motion.

In evaluating a suppression ruling, we consider the evidence of the Commonwealth, as the prevailing party below, and any evidence of the defendant that is uncontradicted when examined in the context of the record. *Commonwealth v. Sanders*, 42 A.3d 325, 330 (Pa. Super. 2012). This Court is bound by the factual findings of the suppression court where the record supports those findings and may only reverse when the legal conclusions drawn from those facts are in error. *Id*.

*Commonwealth v. Haynes*, 116 A.3d 640, 644 (Pa. Super. 2015). Moreover, on October 30, 2013, our Supreme Court in *In re L.J.*, 79 A.3d 1073 (Pa. 2013), clarified that the scope of review of orders granting or

- 3 -

denying motions to suppress is limited to the evidence presented at the suppression hearing. Because Appellant's suppression hearing post-dates the filing date of *L.J.*, which was held to be prospective, *L.J.* applies to this case. *Commonwealth v. Caple*, 121 A.3d 511, 517 n.1 (Pa. Super. 2015).

Appellant acknowledges that the troopers' initial entry into the residence, where Trooper Shoap broke a window so that he could unlock the front door, was effectuated in order to remove an intoxicated person who was in danger of falling from the porch roof of the residence. The people inside of the house, who were laughing at the troopers, refused to open the door to admit them. N.T. (Suppression), 7/6/15, at 10. Nevertheless, Appellant claims that while Trooper Smolleck believed the individual was in danger of falling from the roof and that entry into the residence was necessary to safely remove him, there was no evidence that the individual actually needed emergency aid or that he requested assistance from the troopers. Appellant's Brief at 10.

Appellant also maintains that the trooper's second entry, which occurred after the individual on the roof had indeed fallen, was without consent, warrant, or exigent circumstances, and was therefore unlawful. She suggests that any exigency giving rise to the initial entry had dissipated. Appellant's Brief at 15. Appellant fails to cite support for this claim. *Id*.

The Commonwealth points out Appellant's acknowledgment of the validity of the doctrine permitting police to enter a residence without a

warrant when they reasonably believe someone inside is in need of emergency assistance. Commonwealth's Brief at 10. It avers, however, that Appellant disputes the applicability of the doctrine in this case. The Commonwealth posits that the relevant question is "whether there was an objectively reasonable basis for believing that medical assistance was needed, or persons were in danger." *Id*.

The Commonwealth further responds that the troopers' reentry was a continuation of the initial entry, which was valid. Commonwealth's Brief at 11. In support, it cites **Commonwealth v. Witman**, 750 A.2d 327, 337 (Pa. Super. 2000), where we held that when police are conducting an investigation based on exigent circumstances, entry and reentry for purposes of the initial investigation constitutes one continual search.

Our review of the record compels our agreement with the Commonwealth and the trial court. Appellant is incorrect regarding the exigency of the initial entry. To claim that an exigency did not exist because the inebriated individual(s) did not ask for help has no bearing in fact or reason. This event occurred after midnight, the seven people on the bi-level roof were screaming and yelling, one individual was separated from the other six and was stumbling, running back and forth, was visibly intoxicated, and he ignored police instructions. N.T. (Suppression), 7/6/15, at 3–9.

> "Generally, the police will be excused from compliance with the warrant and probable cause requirements of the Fourth Amendment to the United States Constitution in only limited circumstances. One of these circumstances is when the police

- 5 -

reasonably believe that someone within a residence is in need of immediate aid." ***Commonwealth v. Galvin***, 603 Pa. 625, 985 A.2d 783, 795 (2009), cert. denied, 559 U.S. 1051, 130 S.Ct. 2345, 176 L.Ed.2d 565 (2010) (citations omitted). Additionally, "it is widely recognized that situations involving the potential for imminent physical harm in the domestic context implicate exigencies that may justify limited police intrusion into a dwelling in order to remove an item of potential danger." ***Commonwealth v. Wright***, 560 Pa. 34, 742 A.2d 661, 664 (1999) (citations omitted). The relevant inquiry is "whether there was an objectively reasonable basis for believing that medical assistance was needed, **or persons were in danger**." ***Michigan v. Fisher***, 558 U.S. 45, 49, 130 S.Ct. 546, 175 L.Ed.2d 410 (2009) (citation and internal quotation marks omitted) [emphasis added]. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." ***Ryburn v. Huff***, ___ U.S. ___, 132 S.Ct. 987, 992, 181 L.Ed.2d 966 (2012) (citation omitted).

***Commonwealth v. Potts***, 73 A.3d 1275, 1280–1281 (Pa. Super. 2013) (emphasis added).

Here, police concern for the inebriated individual running on the roof obviously was justified. N.T. (Suppression), 7/6/15, at 9. The troopers' quick thinking in contacting "fire, and EMS and Shippensburg Borough" was fortuitous, because as the troopers feared, by the time they were able to gain entry to the home, that person had already fallen, and the EMS personnel were there to render aid. ***Id***. at 9–11.

We reject Appellant's suggestion that the threat of injury to the person on the roof was "simply a possibility" and "not imminent," and therefore, police should have ignored the exigency because the inebriated man obviously did not want their help. Appellant's Brief at 14. Such

abandonment of their safety objective because the party-goers at the sorority house refused to open the door would have amounted to a dereliction of the troopers' duty. "Indeed, the officers would have been remiss in their duty had they abandoned the scene simply because no one answered the door." *See Commonwealth v. Davido*, 106 A.3d 611, 622 (Pa. 2014) (in domestic dispute case, where police officers had a reasonable belief that person inside residence needed assistance, exigent circumstances existed to support officers' warrantless entry into residence). As our Supreme Court explained:

> The U.S. Supreme Court has recognized that the "Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). *See also Commonwealth v. Miller*, 555 Pa. 354, 724 A.2d 895, 900 (1999) (limited number of circumstances will excuse police from compliance with Fourth Amendment warrant and probable cause requirements; one such circumstance occurs when police reasonably believe that someone within residence is in need of immediate aid); *Commonwealth v. Norris*, 498 Pa. 308, 446 A.2d 246, 248 (1982) (warrantless entry into residence may be permitted, *inter alia*, "when the officers may in good faith believe that they or someone within are in peril of bodily harm."); *accord Commonwealth v. Galvin*, 603 Pa. 625, 985 A.2d 783, 795–96 (2009).

*Id*. at 622. The *Davido* Court continued:

> We agree that "[e]rring on the side of caution is exactly what we expect of conscientious police officers ... where rescue is the objective, rather than a search for crime," "and we should not second-guess the officers' objectively reasonable decision to enter and search a residence without a warrant in such a case."

*Id*. at 624–625 (quoting *U.S. v. Black*, 482 F.3d 1035, 1040 (9th Cir. 2007)). In light of the totality of the circumstances, police entry to the sorority house was reasonable under the circumstances.

We also conclude that police reentry into the sorority house was reasonable. As the trial court observed:

> [T]he Troopers' subsequent reentry into the residence after exiting to secure contraband was also justified by the exigent circumstances that gave rise to the initial entry. The initial justified warrantless entry required the Troopers to damage private property in the furtherance of their duty. This demanded a second entry to establish the identity of the residents of the home to file an incident report. As such, the reentry was not unlawful and the drug paraphernalia discovered in plain sight was not subject to suppression.

Trial Court Opinion, 4/19/16, at 4.

From the time of their initial entry, the troopers were engaged in only one endeavor with one goal—aiding the man on the roof. Once they gained access to the house, they proceeded to the room that would give them access to the porch roof. N.T. (Suppression), 7/6/15, at 11. To reach the man, to even see the man, they had to remove a window air conditioner unit. *Id*. Once they removed it, "the individual was gone, and we observed him laying flat on his back on the ground with the fire and EMS [personnel] tending to him and bringing a stretcher and a neck brace for the individual." *Id*.

Trooper Smolleck testified, "We turned around to exit the residence . . . . [W]e retraced our steps back downstairs. At that point is

whenever I saw . . . a small baggie of marijuana and a marijuana grinder" in plain view. N.T. (Suppression), 7/6/15, at 12. Trooper Smolleck placed the contraband in his patrol car, and as stated *supra*, this contraband did not form the basis for the charge against Appellant. Because the troopers had broken a window to gain access and damaged the air conditioner unit, they had to complete an incident report. Trooper Smolleck testified as follows:

> Because now we need[ed] to type up an incident report stating the reason the window was broken, the reason that we needed to gain entry, and then if the air conditioner was broken from us pulling it out of the window, possibly why the air conditioner was broken. We needed all the individuals [who] lived there for the incident report and documentation to the Commonwealth on the damages to the building.

*Id*. at 13. Thus, Trooper Smolleck returned to the house and knocked on an interior door, which was opened from the inside. *Id*. at 14. He asked "who lived at the residence"; Appellant raised her hand and "approximately five other young ladies in there . . . said we are just here visiting." *Id*. Trooper Smolleck explained his purpose of documenting names for the incident report, and Appellant said, "Okay, that's fine, I will give you my information." Trooper Smolleck continued, "At that point I started to gather her information, and in plain view on a nightstand beside her was a glass marijuana bong and a paraphernalia pipe, at which point I asked whose that was and [Appellant] said that it was hers." *Id*. The bong and pipe formed the basis for the instant charge. *Id*.

There was no unwarranted delay in time, nor was there any purposeful search. The items taken into the custody of police were in plain view as the trooper completed his report. We reiterate that when police are properly authorized to enter a dwelling under the exigent circumstances doctrine, they are also authorized to return to complete the necessary paperwork required by the emergency situation that allowed them to enter the dwelling in the first place. It was entirely reasonable for Trooper Smolleck to reenter the sorority house to obtain the name(s) of people who lived there in light of the forced damage to the property. While in the house for this legitimate purpose, the officers observed in plain view drug paraphernalia. There was no inspection of drawers or closets; indeed, there was no search at all. The officers' immediate return to the residence would seem to be normal and reasonable police procedure under the circumstances. Trooper Smolleck's reentry into the sorority house and seizure of contraband in plain view did not exceed the bounds permissible under the exigency rule. Furthermore, Trooper Smolleck's return to complete his report merely was part of one continuous episode, initially justified by exigent circumstances. Appellant cites to no controlling case law, and there is no logical basis for holding that a single entry is mandated under these circumstances, nor any rule that prohibits an officer, legitimately on the premises, from returning to the residence to perform the police functions which are then immediately justified and required. *Cf*. *Witman*, 750 A.2d at 337 (where police are

conducting a valid search pursuant to a defendant's implied consent, the initial investigation in its entirety is permissible and such an investigation may require officials "to remain on the scene for an extended period of time repeatedly entering or re-entering the building . . . .") (citing **Michigan v. Tyler**, 436 U.S. 499, 510 n.6 (1978)).

Accordingly, we conclude that the trial court properly denied Appellant's motion to suppress evidence. Therefore, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/5/2016