**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

MONROE MARTINEZ,
*Defendant-Appellant.*

No. 04-30098

D.C. No.
CR-02-00246-BLW

OPINION

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, District Judge, Presiding

Argued and Submitted
December 6, 2004—Seattle, Washington

Filed May 16, 2005

Before: Michael Daly Hawkins, Sidney R. Thomas, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Thomas

**COUNSEL**

Leo N. Griffard, Boise, Idaho, for the appellant.

Kevin T. Maloney, Assistant United States Attorney, Boise, Idaho, for the appellee.

---

**OPINION**

THOMAS, Circuit Judge:

In this appeal, we consider whether a domestic disturbance constitutes an emergency sufficient to justify a warrantless entry into a home. Under the circumstances presented by this case, we conclude that it does, and affirm the district court's denial of a suppression motion.

I

In the summer of 2002 in Nampa, Idaho, police officer Mike Phillips was dispatched to the residence of Lisa and Monroe Martinez in response to a domestic violence call. The initial radio transmission received by Phillips indicated that there was an "out of control" male and that the 911 call was disconnected. Phillips recognized the address as a residence he had been called to on a previous occasion for a domestic violence incident. Phillips recalled that on the previous occasion the female had a "fat lip" because "the male subject had hit her."

Upon arriving on the scene Phillips saw Lisa Martinez in the front yard. Lisa was "very upset, crying, she had her face in her hands." Lisa did not say anything that indicated she had been physically injured, and Phillips did not observe evidence of physical injuries.

While attempting to speak with Lisa, Phillips could hear yelling coming from inside the house. Phillips "could not make out" precisely what was being said but he described it as "angry, hostile yelling." Phillips entered the house in order to make sure that the person yelling was not injured, that someone else in the house was not being injured, and to make sure the individual yelling was not going to come out of the house with weapons. One of the possible scenarios that occurred to Phillips was that "Mr. Martinez had a knife stuck in his chest and he was yelling because he was mad [that] he had been stabbed."

As Phillips entered the house he saw a young boy standing in the doorway. He asked the boy if the doorway would lead him to the yelling man, and the boy responded affirmatively. Phillips followed the yelling through a laundry room and hallway to a bedroom where he observed Martinez kneeling on the floor and reaching under the bed. Martinez was yelling "he was going down for this."

Phillips was afraid that Martinez was searching for a weapon under the bed. Phillips told Martinez to move into the living room "where we could figure out what was going on." At this point, Phillips did not regard Martinez as a criminal suspect. Upon entering the living room, Phillips noticed two rifles and a shortened barrel shotgun resting on the couch. Phillips "immediately" asked Martinez, "What are those doing there?" Martinez responded that he knew the police were coming and he was trying to get rid of the weapons before they arrived. Martinez, as it turned out, had been previously convicted in state court of felony possession of a controlled substance, and was on state probation at the time of the domestic disturbance.

Lisa and Monroe Martinez were both arrested for domestic battery. Later, the United States charged Monroe Martinez with unlawful possession of firearms under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Following an evidentiary hearing,

the district court denied Martinez's motion to suppress evidence of the discovered firearms and the statements made by Martinez while Officer Phillips was inside the house. Subsequently, Martinez entered a conditional plea, reserving the right to appeal the court's denial of his motion to suppress. Martinez was sentenced to serve a term of 37 months imprisonment, followed by three years of supervised release, and ordered to pay $1,100 in criminal penalties. This timely appeal followed.

We review de novo the lawfulness of a search under the Fourth Amendment, but review the district court's factual findings for clear error. *Ornelas v. United States*, 517 U.S. 690, 699 (1996).

## II

**[1]** The district court properly denied the motion to suppress evidence of the firearms discovered in the house. The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585 (1980) (quoting *United States v. U.S. District Court*, 407 U.S. 297, 313 (1972)). For that reason, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Id.* at 586. There are two general exceptions to the warrant requirement for home searches: exigency and emergency. Under the exigency doctrine, a warrantless search of a home is permitted if there is probable cause to believe that contraband or evidence of a crime will be found at the premises and that exigent circumstances exist. *United States v. Lai*, 944 F.2d 1434, 1441 (9th Cir. 1991) (abrogated on other grounds). As a general rule, "we define exigent circumstances as those circumstances that would cause a reasonable person to believe that entry . . . was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *United States v. McCon-*

*ney*, 728 F.2d 1195, 1199 (9th Cir. 1984) (en banc) (abrogated on other grounds). In this case, Martinez correctly argues that the exigency doctrine is inapplicable because the officer did not believe that evidence of a crime would be found inside the house. When the domestic violence victim is still in the home, circumstances may justify an entry pursuant to the exigency doctrine. *United States v. Brooks*, 367 F.3d 1128, 1135 (9th Cir. 2004). In *Brooks*, we applied the exigency doctrine to allow entry when loud fighting had been heard, the officers saw the room in disarray, and the victim was still on the premises but not visible to the officers. As we noted in that case, the officers had probable cause to suspect evidence of crime and had an exigent need to enter the premises to make sure that the victim was safe. *Id.* Here, in contrast, the victim had left the premises and the officer did not have probable cause to believe there was contraband or evidence of a crime in the house.

**[2]** Although the exigency doctrine does not provide a constitutional basis for the warrantless entry in this case, the emergency doctrine provides justification. "The emergency doctrine provides that if a police officer, while investigating within the scope necessary to respond to an emergency, discovers evidence of illegal activity, that evidence is admissible even if there was not probable cause to believe that such evidence would have been found." *United States v. Cervantes*, 219 F.3d 882, 888 (9th Cir. 2000).

The emergency exception to the warrant requirement contains three requirements:

> (1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property. (2) The search must not be primarily motivated by intent to arrest and seize evidence. (3) There must be some reasonable basis,

approximating probable cause, to associate the emergency with the area or place to be searched.

*Id.* (quoting *People v. Mitchell*, 347 N.E.2d. 607, 609 (N.Y. 1976)).

**[3]** The volatility of situations involving domestic violence make them particularly well-suited for an application of the emergency doctrine. When officers respond to a domestic abuse call, they understand that "violence may be lurking and explode with little warning." *Fletcher v. Clinton*, 196 F.3d 41, 50 (1st Cir. 1999). Indeed, "more officers are killed or injured on domestic violence calls than on any other type of call." *Hearings before Senate Judiciary Committee,* 1994 WL 530624 (F.D.C.H.)(Sept. 13, 1994)(statement on behalf of National Task Force on Domestic Violence).

**[4]** As a result of these factors, other circuits have recognized the need for law enforcement officers to enter a home without a warrant when it appears that the occupant may injure himself or others. *Fletcher*, 196 F.3d at 49; *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998). As the Second Circuit observed in *Tierney*: "Courts have recognized the combustible nature of domestic disputes, and have accorded great latitude to an officer's belief that warrantless entry was justified by exigent circumstances when the officer had substantial reason to believe that one of the parties to the dispute was in danger." 133 F.3d at 197.

**[5]** Here, the officer responded to an interrupted 911 call concerning domestic violence at a residence known to the officer as the source of prior episodes of domestic violence. On arrival, he observed a crying woman in the front yard and heard continued angry yelling from the interior of the house. He reasonably believed there was an emergency at hand and an immediate need for his assistance for the protection of life or property. He entered the house and proceeded to the bedroom where the defendant was located. In moving the defen-

dant out of the bedroom, the officer saw the firearms. His observation was not motivated by an intent to arrest and seize evidence, but rather was incidental to the officer's management of the situation. The living room where the weapons were discovered was the part of the premises in which the emergency situation had arisen and was logically used by the officer as a place to defuse the situation. As such, there was a sufficient nexus between it and the emergency for the doctrine to apply. *Cf. United States v. Deemer*, 354 F.3d 1130, 1132-33 (9th Cir. 2004) (holding that a search of a motel room was not justified by the emergency doctrine because there was not a reasonable basis to associate the emergency with the area to be searched).

**[6]** In sum, the three requirements of the emergency doctrine were satisfied in this case, justifying the officer's warrantless entry into the home and subsequent seizure of the firearms. The district court correctly denied the suppression motion as to the firearms.

### III

The district court also properly denied the motion to suppress evidence of the statements made at the scene. Certainly, the usual rules pertaining to *Terry* stops do not apply in homes. *See United States v. Washington*, 387 F.3d 1060, 1067 (9th Cir. 2004) (noting that the Supreme Court "has never expanded *Terry* to allow a *Terry*-stop at an individual's home"); *United States v. Winsor*, 846 F.2d 1569, 1574 (9th Cir. 1988) (en banc) (refusing to extend the principle of *Terry* stops to the home).

**[7]** However, *Miranda* is subject to a narrow "public safety" exception, allowing police officers the right to "ask questions reasonably prompted by a concern for the public safety." *New York v. Quarles*, 467 U.S. 649, 656 (1984). In order for the public safety exception to apply, there must have been "an objectively reasonable need to protect the police or the public

from any immediate danger associated with [a] weapon." *Id.* at 658, 659 n. 8; *see also Allen v. Roe*, 305 F.3d 1046, 1050 (9th Cir. 2002); *United States v. Carrillo*, 16 F.3d 1046, 1049 (9th Cir. 1994); *United States v. Fleming*, 917 F.2d 850, 854 (5th Cir. 1990) (*Quarles* public-safety exception did not apply because officer did not have knowledge that suspect possessed a firearm). This exception allows officers, when reasonably prompted by a concern for the public safety, to engage in limited questioning of suspects about weapons in potentially volatile situations. *Quarles*, 467 U.S. at 656.

**[8]** Here, the officer entered the site of a domestic disturbance and, in the process of ascertaining what had occurred, observed weapons in plain view. The officer was entitled to make inquires about the weapons under the *Quarles* public safety exception to *Miranda*. The district court correctly denied the motion to suppress the few statements made by the defendant at the scene prior to receiving a *Miranda* warning.

**AFFIRMED.**