**L.L. BENAS, individually and as the representative of the class of persons defined in averment 22, Plaintiff—Appellant,**

v.

**Le Roy BACA; Michael Willoughby; Gerald Rod; John Roberts; Michael Konecny; Donald Steele; Juan Espinoza; Michael Tunget, Defendants—Appellees,**

and

**Michael Antonovich; Yvonne Burke; Donald Knabe; Gloria Molina; Zev Yaroslavsky, Defendants.**

No. 03–57104.

United States Court of Appeals, Ninth Circuit.

Argued & Submitted Sept. 16, 2005.

Decided Dec. 12, 2005.

Marion R. Yagman, Stephen Yagman, Yagman & Yagman & Reichmann, Venice Beach, CA, for Plaintiff–Appellant.

Lawrence Trevor Grimm, Manning & Marder Kass, Ellrod & Ramirez, LLP, Los Angeles, CA, for Defendants–Appellees.

Before FARRIS, THOMPSON, and BYBEE, Circuit Judges.

MEMORANDUM *

Plaintiff-appellant L.L. Benas appeals the district court's summary judgment in favor of defendants-appellees ("the defendants"), the Sheriff and deputy sheriffs of the Los Angeles County Sheriffs' Department. In this § 1983 civil rights action, Benas alleges various violations of her constitutional rights including the use of excessive force to subdue her during an arrest, unlawful arrest, malicious prosecution, illegal search of her apartment, conspiracy, and official liability pursuant to *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

We have jurisdiction under 28 U.S.C. § 1291. We affirm the district court's

summary judgment in favor of the defendants on Benas's claims predicated upon her allegations of unlawful arrest, malicious prosecution, conspiracy and Sergeant Michael Willoughby's entry into her apartment. As to Benas's claims predicated upon her allegations of excessive force, Deputy Gerald Rod's entry into her apartment, Willoughby and Rod's "look into the door of a room" in the apartment, and as to the *Monell* claim, we reverse and remand to the district court.

## A. Excessive Force

■ The heart of Benas's appeal is that there are substantial material issues of fact in dispute regarding her conduct preceding Willoughby's use of force. Pursuant to *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), officers are permitted to use only such force as is "objectively reasonable" under the circumstances to effect an arrest or detention. The most important of the *Graham* factors is whether the plaintiff posed an immediate threat to the safety of the officer or others. *Smith v. City of Hemet,* 394 F.3d 689, 702 (9th Cir.2005) (en banc), *cert. denied,* —— U.S. ——, 125 S.Ct. 2938, 162 L.Ed.2d 866 (2005).

The key issue in this case is whether, viewing the evidence in the light most favorable to Benas, Willoughby reasonably could have believed Benas posed an immediate threat. This inquiry requires consideration of Benas's conduct throughout the encounter with Willoughby, not just whether she attempted to bite him. *See Hammer v. Gross,* 932 F.2d 842, 846 (9th Cir.1991) (en banc) ("The question is not simply whether the force was necessary to accomplish a legitimate police objective; it is whether the force used was reasonable

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

in light of *all* the relevant circumstances.").

The record indicates a factual dispute as to whether Benas kicked or punched Willoughby, or attempted to do so. In addition, Willoughby's use of force in the form of a closed-fist punch to Benas's face was so severe that it precludes summary judgment in view of the material facts in dispute. A thorough inquiry into the facts, including Benas's alleged attempt to bite Willoughby, is needed before a court can rule whether the use of force was reasonable. *See Chew v. Gates,* 27 F.3d 1432, 1441 (9th Cir.1994) ("The three factors articulated in *Graham,* and other factors bearing on the reasonableness of a particular application of force, are not to be considered in a vacuum but only in relation to the amount of force used to effect a particular seizure...."). Moreover, there are material factual disputes as to whether Willoughby reasonably should have known that his conduct violated "clearly established" law. Accordingly, summary judgment on the basis of qualified immunity is inappropriate. *See Saucier v. Katz,* 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Smith,* 394 F.3d at 704 n. 7; *Santos v. Gates,* 287 F.3d 846, 855 n. 12 (9th Cir.2002). We, therefore, reverse the district court's summary judgment in favor of defendant Willoughby on Benas's § 1983 claim predicated upon his alleged use of excessive force in effecting her arrest.

## B. Unlawful Arrest

■ Benas's Fourth Amendment rights were not violated by her arrest because the officers had probable cause to arrest her for a violation of California Penal Code Section 148 (delaying or obstructing a police officer). An arrest is lawful so long as there is probable cause to arrest the suspect for *any* offense on the basis of facts as known to the arresting officers. *Devenpeck v. Alford,* 543 U.S. 146, 125 S.Ct. 588, 593–95, 160 L.Ed.2d 537 (2004). Benas's conduct of obstructing the defendant officers' efforts to investigate the earlier disturbance and to defuse the situation was sufficient to establish probable cause for her arrest for violating California Penal Code Section 148. Accordingly, the district court properly granted summary judgment in favor of the defendants on Benas's Fourth Amendment claim predicated upon her allegations of an unlawful arrest.

## C. Malicious Prosecution

■ Benas asserts a § 1983 claim predicated upon malicious prosecution for her charged violation of California Penal Code Section 243 (battery on a police officer). This claim fails because there was no Fourth Amendment "seizure."[1] While Benas contends her notice to appear for this alleged offense constitutes a Fourth Amendment seizure, we have held that more onerous pre-trial requirements do not constitute a seizure. *See Karam v. City of Burbank,* 352 F.3d 1188, 1193–94 (9th Cir.2003) (holding that plaintiff's own-recognizance release agreement requiring her to obtain permission of the court before leaving the state and to make court appearances did not amount to a seizure under the Fourth Amendment). Benas merely had to show up for a single court appearance (which never materialized because the district attorney declined to prosecute the case), a requirement "no more burdensome than the promise to appear a motorist makes when issued a traf-

---

1. While the district court did not address whether a Fourth Amendment violation occurred regarding this claim, we may nevertheless affirm on any basis supported by the record. *Adams v. Johnson,* 355 F.3d 1179, 1183 (9th Cir.2004).

fic citation." *Id.* at 1194. Thus, we affirm the district court's summary judgment in favor of the defendants on Benas's § 1983 claim predicated upon malicious prosecution.

## D. Illegal Entry and Search

### 1. Rod's Entry

■ Officer Rod entered Benas's apartment without a warrant to take Christensen there after she attempted to kick Willoughby. He did this to prevent her from interfering with Willoughby's arrest of Benas. In doing so, he may have violated Benas's Fourth Amendment rights.

It is undisputed that the defendant officers lacked probable cause to enter Benas's apartment. Thus, the exigent circumstances exception cannot justify Rod's entry without a warrant. *See United States v. Cervantes,* 219 F.3d 882, 887 (9th Cir.2000) (stating that exigent circumstances exception requires that "(1) there is probable cause to believe that a crime will be found in the residence; *and* (2) exigent circumstances are present." (emphasis added)).

The emergency "community caretaker" exception, which permits entry into a home without a warrant by a police officer investigating within the scope necessary to respond to an emergency, might justify Rod's entry into Benas's apartment. *See id.* at 888 (noting that emergency exception requires that "(1) The police [ ] have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property. (2) The search must not be primarily motivated by intent to arrest and seize evidence. (3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched." (quoting *People v. Mitchell,* 39 N.Y.2d 173, 383 N.Y.S.2d 246, 347 N.E.2d 607, 609

(1976))). Cases in which the emergency exception validates warrantless entry typically involve an immediate need specifically associated with the home. *See Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) ("[T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid."); *United States v. Deemer,* 354 F.3d 1130, 1132–33 (9th Cir.2004) (police officer's entry into defendant's motel room was not justified by emergency doctrine because tenuous connection between possible emergency somewhere in motel and specific room searched); *Cervantes,* 219 F.3d at 890 ("Under the emergency doctrine, then, an officer's search must be limited to only those areas *necessary* to respond to the perceived emergency." (emphasis added)).

Although we have not previously addressed a circumstance where the emergency was outside the home, we agree with the majority of our sister circuits that when an appropriate emergency exists, entry without a warrant is constitutionally permissible. *See, e.g., United States v. Wilson,* 306 F.3d 231, 239–41 (5th Cir. 2002) (holding that an exigency sufficient to justify warrantless entry to a home may exist when an arrestee's partially clothed status poses a risk of injury); *United States v. Gwinn,* 219 F.3d 326, 333 (4th Cir.2000) (same). Here, the record reflects there was an emergency outside Benas's apartment. There is evidence that both women were upset, intoxicated and perhaps violent. There is no evidence that Rod entered the apartment with an ulterior motive to seize evidence or make an arrest. We cannot tell from the record before us whether Rod's entry into Benas's apartment was a permissible response to the emergency, or if it was not, whether

Rod should have known his entry into the apartment was unlawful. Only further factual findings will show whether Rod reasonably believed that there was such an emergency that moving Christensen somewhere was necessary and there was no other safe place reasonably available to move her except Benas's apartment. It may turn out that Benas's apartment was "logically used by the officer as a place to defuse the situation." *United States v. Martinez*, 406 F.3d 1160, 1165 (9th Cir. 2005). Accordingly, we reverse the district court's grant of summary judgment in favor of defendant Rod on Benas's § 1983 claim predicated upon Rod's entry into her apartment, and remand to the district court for further factual inquiry.

### 2. Willoughby's Entry

■ Willoughby's entry into the apartment to retrieve a towel to render first aid to Benas is constitutionally valid under the emergency doctrine. *See Martin v. City of Oceanside*, 360 F.3d 1078, 1081–82 (9th Cir.2004); *Deemer*, 354 F.3d at 1132–33; *Cervantes*, 219 F.3d at 888–90. Willoughby reasonably could have believed that there was an emergency requiring his entry into the apartment. Immediate assistance was required because Benas was seriously injured. Benas offers no facts to support her contention that Willoughby had an ulterior motive in entering her apartment. Willoughby required something to help slow Benas's bleeding and the most reasonable place to find such an item was inside Benas's apartment. Therefore, the district court properly granted summary judgment rejecting Benas's Fourth Amendment claim regarding Willoughby's entry into her apartment.

### 3. Willoughby and Rod's "Look Into the Door of a Room"

■■ Willoughby and Rod both testified that while in Benas's apartment they "looked into the door of a room to make sure no one was inside." Benas contends that this "look" also violated her Fourth Amendment rights. Based on the record before us, Willoughby and Rod's "look into the door of a room" cannot be permitted as a "protective sweep" because the defendants have not provided "specific and articulable facts" to justify the warrantless intrusion. *See Maryland v. Buie*, 494 U.S. 325, 337, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) (holding that "[t]he Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene."); *United States v. Castillo*, 866 F.2d 1071, 1079 (9th Cir. 1988) (stating that "[t]he Government must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, would reasonably warrant the warrantless intrusion."). The timing, location, and other factual circumstances of the "look" are unclear from the record. Further factual findings are necessary to determine the constitutionality of the "look." Accordingly, we reverse the district court's grant of summary judgment in favor of the defendants on Benas's § 1983 claim predicated upon Willoughby and Rod's "look into the door of a room" in her apartment, and remand to the district court for a further factual inquiry.

### E. Conspiracy Claim

■ Benas's § 1983 claim founded upon an alleged conspiracy to violate her right to be free from malicious prosecution necessarily fails because she did not establish the existence of the required underlying constitutional violation. *See Christian Gospel Church, Inc. v. City and County of San Francisco*, 896 F.2d 1221, 1226 (9th

Cir.1990), *superceded on other grounds by* 42 U.S.C. § 2000e; *Dooley v. Reiss,* 736 F.2d 1392, 1394 (9th Cir.1984). Benas's claim that a conspiracy existed to conceal Willoughby's use of excessive force was also properly denied on summary judgment because Benas did not provide evidence from which the necessary "meeting of the minds" or agreement to violate her constitutional rights could be inferred. *See Mendocino Envtl. Ctr. v. Mendocino County,* 192 F.3d 1283, 1301 (9th Cir.1999). Accordingly, we affirm the district court's summary judgment in favor of the defendants on Benas's § 1983 claim predicated upon her assertions of conspiracy.

### F. *Monell* Claim Against Sheriff Baca

■ Benas asserts a *Monell* claim for supervisorial liability against Leroy Baca, the Los Angeles County Sheriff, based on the existence of what she alleges to be an official policy or custom of insufficiently managing the risk of officer misconduct. Sheriff Baca may be liable in his individual capacity if a violation of Benas's federal rights is attributable to an official policy or custom for which Baca was responsible. *See Watkins v. City of Oakland,* 145 F.3d 1087, 1093 (9th Cir.1998). However, as the district court correctly concluded, such liability may not be imposed absent an underlying violation of the plaintiff's rights that is related to the official policy or custom in question. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986). In light of our decision reversing summary judgment against Benas on her underlying § 1983 claims predicated upon Willoughby's use of excessive force in effecting her arrest and upon Rod's entry into her apartment, we reverse the district court's summary judg-

ment in favor of Sheriff Baca on Benas's *Monell* claim. We remand that claim to the district court to permit it to determine whether any violation of Benas's constitutional rights occurred, and if so, whether such a violation was attributable to an official policy or custom for which Sheriff Baca was responsible. "The plaintiffs/appellants on one hand, and the defendants/appellees on the other, shall each bear its own costs for this appeal."

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED** for further proceedings.