Filed 3/20/26

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G064219 |
| v. | (Super. Ct. No. 22NF0712) |
| ULISES PEREZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Larry Yellin, Judge. Reversed and remanded with instructions.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Ulises Perez challenges his convictions for firearm and drug offenses, asserting that the trial court erred by denying his suppression motion. He contends police violated his Fourth Amendment rights by ordering him out of a residence without probable cause and without a warrant. We agree that Perez's in-residence seizure was unconstitutional and required suppression of certain evidence. We therefore reverse the judgment and remand for further proceedings.

FACTS

At around 11:00 p.m., officers responded to a 911 call reporting a man walking around with a gun in an area known to have gang activity. A follow-up call detailed the man's appearance and said he had placed a gun inside a white Kia in a nearby parking lot. A responding officer realized he had seen a man matching that description—later identified as Perez—pacing back and forth near a white Kia.

Perez was seen entering an apartment nearby.[1] An officer walked up to the open front door, shined his flashlight through the closed screen door, and saw Perez sitting on a couch facing the door.

Gun drawn, the officer told Perez that he was being detained and ordered him out. Perez initially did not move. After another officer drew his gun and several more orders to come out, Perez complied.

Once he was outside, officers placed Perez in handcuffs. He declined to answer any questions. The reporting party identified Perez as the man who had placed the gun in the white Kia. The car, which was blocking the alley, was impounded; an inventory search found a gun and drugs. Officers then formally arrested and searched Perez, finding his I.D., cash,

---

[1] It is undisputed Perez was a guest with a reasonable expectation of privacy inside the residence.

2

pay-owe notations, a cellphone, and a receipt relating to the white Kia. A records check revealed he had been convicted of felonies and was prohibited from possessing firearms.

After being charged with several firearm and drug offenses, Perez moved to suppress the evidence against him. (See Pen. Code, § 1538.5.) He contended the officers violated his Fourth Amendment rights by arresting him inside a residence without a warrant or probable cause.

In opposition, the prosecution claimed probable cause was not required for Perez's initial seizure because officers merely detained him based on reasonable suspicion—he was not arrested until police learned he was a convicted felon and the reporting party identified him. And it asserted that officers did not need a warrant to order Perez out of the residence, noting they never entered it.

The trial court denied the suppression motion, concluding Perez had been properly detained based on reasonable suspicion. Perez then pleaded guilty to all counts. The trial court sentenced him to three years in prison, in addition to concurrent and stayed terms.

DISCUSSION

We agree with Perez that the officers violated his Fourth Amendment rights by seizing him inside the residence without probable cause and without a warrant. On appeal from the denial of a motion to suppress, we defer to the trial court's factual findings if supported by substantial evidence but independently apply constitutional principles to those findings. (*People v. Session* (2023) 93 Cal.App.5th 723, 730.)

The Fourth Amendment protects individuals from "unreasonable searches and seizures." (U.S. Const. amend. IV.) A person is seized when an officer restrains their liberty by using physical force or making a show of

3

authority to which the person submits. (*California v. Hodari D.* (1991) 499 U.S. 621, 626 (*Hodari D.*).) An arrest, the typical form of a seizure, requires probable cause.[2] (*People v. Hughes* (2002) 27 Cal.4th 287, 328.)

"'[N]owhere is the protective force of the fourth amendment more powerful than [within] the sanctity of the home' . . . ." (*United States v. Washington* (9th Cir. 2004) 387 F.3d 1060, 1067–1068.) "[W]hen it comes to the Fourth Amendment, the home is first among equals. At the Amendment's 'very core' stands 'the right of a man to retreat into his home and there be free from unreasonable governmental intrusion.'" (*Florida v. Jardines* (2013) 569 U.S. 1, 6.)

Thus, an arrest in the home requires more than just probable cause. It also requires either a warrant or exigent circumstances. (*People v. Lujano* (2014) 229 Cal.App.4th 175, 183 (*Lujano*).)

Here, Perez was seized while still inside the residence, when he submitted to the officer's authority and complied with their orders—supported by drawn guns—to come out. (*Hodari D., supra*, 499 U.S. at p. 626.) At the suppression hearing, it was undisputed that there had been neither probable cause to arrest him, nor a warrant, nor exigent circumstances.[3] Without those necessary elements, his seizure in the residence was unlawful.

---

[2] Probable cause to arrest involves information "sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." (*Beck v. Ohio* (1964) 379 U.S. 89, 91.)

[3] In response to our request for supplemental briefing on whether *Terry v. Ohio* (1968) 392 U.S. 1 (*Terry*) applies to in-home seizures, the Attorney General argues for the first time that the officers had probable cause to believe that Perez had violated Penal Code section 26350 (openly carrying an unloaded handgun). We decline to consider this new theory,

We are unpersuaded by the Attorney General's contentions that Perez's seizure was nevertheless lawful because (1) it was merely a detention that did not require probable cause, and (2) the officers did not enter the residence and thus did not need a warrant.

First, Perez's initial seizure did not qualify as a lawful detention—a limited seizure short of an arrest justified by mere reasonable suspicion. Under *Terry*, reasonable suspicion that a person is involved in criminal activity is sufficient for an officer to "stop the person for a brief time and take additional steps to investigate further." (*Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty.* (2004) 542 U.S. 177, 185.) But this exception to the probable cause requirement generally "'does not apply to in-home searches and seizures.'" (*Lujano, supra*, 229 Cal.App.4th at p. 182; accord, *United States v. Martinez* (9th Cir. 2005) 406 F.3d 1160, 1165 ["the usual rules pertaining to *Terry* stops do not apply in homes"].) The cases the Attorney General cites are inapposite, as they involved officers who were already lawfully inside the residence. (See *United States v. Romain* (1st Cir. 2004) 393 F.3d 63, 66, 72 [after entering with consent, officers were justified in detaining person acting in threatening manner]; *United States v. Campa* (1st Cir. 2000) 234 F.3d 733, 736, 738 [officers lawfully inside detained persons as they entered residence].)

Second, an in-home arrest requires a warrant, even if the officers remain outside. Courts have disagreed on whether warrantless in-house arrests without entry are permissible (Compare *Knight v. Jacobson* (11th Cir.

which was not responsive to our question. (*People v. Wilkinson* (2008) 163 Cal.App.4th 1554, 1574 ["the People may not . . . tender a new theory not raised at the original suppression hearing"]; *Boston v. Penny Lane Centers, Inc.* (2009) 170 Cal.App.4th 936, 944, fn. 6 [appellate court will not entertain theory first raised in supplemental brief].)

2002) 300 F.3d 1272, 1277 [officer may order suspect out and then arrest him without warrant], with *United States v. Allen* (2d Cir. 2016) 813 F.3d 76, 78 [prohibition on warrantless arrests "primarily triggered by the *arrested person's* location"].)

*Lujano* adopted the latter approach: "'[I]t is the location of the arrested person, and not the arresting agents, that determines whether an arrest occurs within a home." (*Lujano, supra*, 229 Cal.App.4th at p. 187.) There, officers suspecting a possible burglary peered into a partially open door and ordered the defendant out of his residence, ultimately finding contraband and other evidence. (*Lujano, supra*, 229 Cal.App.4th at p. 180.) Although the defendant was initially only "detained" and the officers did not enter, the Court of Appeal concluded the officers needed both probable cause and a warrant to seize the defendant while *he* was inside the residence. (*Id.* at p. 179.) Because they had neither, the detention was unlawful and required suppression of the evidence. (*Ibid.*)

We find this approach compelling and reach a similar conclusion here. The *Terry* exception did not permit the officers to order Perez out of the residence without both probable cause and a warrant.

The 40-year-old case the Attorney General cites in support of warrantless arrests without entry carries little weight. (See *People v. Trudell* (1985) 173 Cal.App.3d 1221 (*Trudell*).) In that case, involving similar facts, the majority opinion relied in large part on its conclusion that "the arrest occurred outside of [the defendant's] residence" (*id.* at p. 1228), even though police summoned him out through "bullhorned orders delivered at gunpoint" (*id.* at p. 1233 (dis. opn. of Poché, J.).) No published California case has ever endorsed this analysis, which predates both *Hodari D.* and *Lujano*. We decline to follow it. Under the exclusionary rule, the evidence seized due to

Perez's illegal seizure must be suppressed.[4] (*Davis v. United States* (2011) 564 U.S. 229, 232.)

The parties agree that if Perez's detention was unconstitutional, all evidence seized on his person must be suppressed. It is also undisputed that Perez's statements—in this case, his refusal to answer questions— should be excluded. (*Wong Sun v. United States* (1963) 371 U.S. 471, 486–487 [defendant's statements after unlawful arrest excluded].) And although the Attorney General suggests that Perez's in-field identification by the reporting party should not be excluded, the exclusionary rule applies to that kind of evidence as well. (*People v. Teresinski* (1982) 30 Cal.3d 822, 832 [victim's identification of defendant's booking photo—taken after illegal detention— was inadmissible].)

## DISPOSITION

The judgment is reversed and the matter is remanded. The trial court is instructed to (1) permit Perez to withdraw his guilty plea and (2) grant his suppression motion to the extent it sought to exclude his in-field

---

[4] Unlike this case, *Trudell* involved an arrest based on probable cause. (*Trudell, supra*, 173 Cal.App.3d at p. 1229.) Thus, we need not decide whether the officers here could rely on *Trudell* in good faith in executing a warrantless seizure, as the Attorney General contends. Nothing supports application of the good-faith exception to this in-residence seizure without probable cause.

identification, his statements during his initial seizure, and all items seized on his person.

SCOTT, J.

WE CONCUR:

DELANEY, ACTING P. J.

GOODING, J.